# Third District Court of Appeal

## State of Florida

Opinion filed April 14, 2021.

_____

No. 3D19-0570
Lower Tribunal No. 16-182-A-K
_____

**Anthony Joseph Valdes,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An appeal from the Circuit Court for Monroe County, Mark H. Jones, Judge.

Carlos J. Martinez, Public Defender, and Manuel Alvarez, Assistant Public Defender, for appellant.

Ashley Moody, Attorney General, and Ivy R. Ginsberg, Assistant Attorney General, for appellee.

Before EMAS, C.J., and SCALES and LOBREE, JJ.

LOBREE, J.

<u>ON MOTION FOR REHEARING</u>

On December 18, 2019, we affirmed the judgment of conviction and sentence of Anthony Valdes ("Valdes") for aggravated battery with a firearm, a lesser included offense of the charge of attempted second-degree murder with a firearm. Prior to his trial, Valdes moved to dismiss the information based on section 776.032, Florida Statutes (2017), Florida's "Stand Your Ground" law. In affirming Valdes' judgment, we cited our decision in Love v. State, 247 So. 3d 609 (Fla. 3d DCA 2018) ("Love I"), which the supreme court quashed the following day in Love v. State, 286 So. 3d 177 (Fla. 2019) ("Love II").

We now withdraw our December 18, 2019 decision and substitute this opinion in its stead. Specifically, we write to address Valdes' contention he is entitled to a new Stand Your Ground hearing because the trial court failed to apply the correct burden when considering his self-defense immunity claim. This issue also requires us to determine whether this error was rendered harmless or cured by Valdes' subsequent presentation of the self-defense claim to the jury at trial, which the state overcame by meeting the trial burden of proof beyond a reasonable doubt. For the reasons articulated below, we hold that Valdes is not entitled to a new Stand Your Ground hearing under the facts of this case, and certify conflict with Nelson v. State, 295 So. 3d 307 (Fla. 2d DCA 2020).

Facts and Procedural Background

The underlying case arose from a physical altercation in October 2015 between Valdes and his friend, Ray Anthony Alvarez, Jr. ("Alvarez"). During the altercation, Valdes shot Alvarez twice (first in the back and then in the thigh), leaving him paralyzed after the first shot. Valdes claimed self-defense. At the time, the burden was on the defendant to show entitlement to self-defense immunity at a pretrial immunity hearing by a preponderance of the evidence. See Maddox v. State, 288 So. 3d 1223, 1224 (Fla. 5th DCA 2019) (citing Bretherick v. State, 170 So. 3d 766, 779 (Fla. 2015)). Effective June 9, 2017, the legislature amended the Stand Your Ground statute by placing the burden on the state to rebut the defendant's prima facie claim of self-defense immunity by clear and convincing evidence. See § 776.032(4), Fla. Stat. (2017).

In April 2018, Valdes moved to dismiss the information on the ground he was immune from criminal prosecution pursuant to the amended statute. The trial court conducted the evidentiary hearing in June and July 2018. At the outset of the hearing, the court acknowledged that the issue of retroactivity of the amendment to section 776.032(4) was then under review by the Florida Supreme Court. Bound by this court's decision in Love I, however, the trial court found the amended statute inapplicable to Valdes'

3

claim, and stated it would consider Valdes' entitlement to immunity based on the pre-amendment standard. The court then heard testimony from Valdes, his girlfriend and mother of their three children, Alvarez, Valdes' neighbor, and responding law enforcement officers.

Valdes testified that in the evening of October 14, 2015, Alvarez visited him at his house, where he lived with his girlfriend and their two baby daughters. They had about $500 in cash at home, which went missing shortly after Alvarez's arrival. After Alvarez denied taking the money, Valdes, his girlfriend, and Alvarez got into a verbal altercation. Valdes then went to his bedroom to retrieve his .32 caliber handgun, which he put in his pocket. Alvarez left the house shortly thereafter, and Valdes followed him outside. While arguing about the money in the yard, Alvarez struck Valdes on the side of his head. As Alvarez was attempting to leave, Valdes pulled the back of his shirt. Alvarez turned around, grabbed Valdes by his head, and put his arm around his neck. Valdes tried to defend himself, but could not do so properly, as his left hand was injured as a result of an accident (severing his thumb) he suffered earlier that day. Not being able to "break free," Valdes reached into his pocket, took out his gun, and discharged the gun from behind his back. Although he was not aiming at Alvarez, the bullet hit him, and Alvarez immediately fell to the ground. While on the ground, Alvarez

4

told Valdes he could not feel his legs. However, as Alvarez started crawling across the grass and shouting at Valdes, Valdes shot Alvarez in the back of his thigh "to neutralize th[e] threat," fearing that Alvarez would get up and attack him again. Valdes then located the stolen money in Alvarez's right shoe. Valdes reenacted the fight and the shooting at the hearing.

Valdes' account was partially corroborated by his girlfriend. She heard the argument between Valdes and Alvarez in the yard. After she observed Alvarez throw the first punch, she returned to the house to call the police. While inside, she heard a gunshot. When she came back outside, she saw Alvarez "pushing himself off the ground" and making threats toward Valdes. As Alvarez was trying to get up, Valdes shot him in the back of his leg.

Alvarez testified differently. He admitted he stole some cash from Valdes and his girlfriend, which he hid in his shoe, but claimed he returned the money while still at their house, after Valdes pointed the gun at him. Alvarez then left the house, and, as he was walking to his bicycle, which he had left in the yard, Valdes shot him in the back, paralyzing him from the waist down. At the time, Valdes was about ten to twelve feet behind him. Alvarez said that he immediately lost feeling in his legs and told Valdes, "You . . . paralyzed me." He pleaded with Valdes to call 911, but instead Valdes yelled at his girlfriend that he shot Alvarez and asked her to bring him a knife.

5

While Alvarez remained lying on the ground, Valdes walked around him for about a minute, and then shot him in the leg. He then picked up the bicycle and threw it on the top of him.

Valdes' neighbor was walking her dog when she heard an argument about money coming from Valdes' yard. During the argument, she heard someone say, "[d]on't touch my hand," and "[t]he hand is already messed up." Later, when she finished walking the dog and was sitting in her patio, she heard a gunshot. When she stood up to see what happened, she saw Valdes shoot Alvarez the second time.

Law enforcement officers arrived at the scene to find Alvarez lying on his stomach in the grass. He had a large blood spot on the back of his shirt, was not moving, and there was a bicycle on top of him. At the scene, the officers recovered Valdes' gun, two bullet casings, and a knife, which was found stabbed into the ground next to Alvarez. The officers observed dried blood on Valdes' head and several cuts on his arm. After Valdes waived his Miranda[1] rights, the officers conducted several interviews with him about the events of that evening.

The trial court found that Valdes was not immune from prosecution, concluding that he "did not possess a reasonable belief that his use of deadly

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

6

force against [Alvarez] was necessary to prevent imminent death or great bodily harm to himself, [his girlfriend,] or their children." While the court reiterated that it was applying the pre-amendment burden of proof, the court expressed the view the case was not even a close one. The court did not find Valdes' testimony and his version of what transpired during the altercation to be credible or supported by the evidence. The court found that the shooting during the physical altercation was not justified, as Valdes' prior injury did not incapacitate him to the extent that he had no alternative but to shoot Alvarez. As to Valdes' second shot, the court specifically observed:

> You know, you shot a man in the back and, when he's on the ground, you shoot him again, and somehow the presentation is that . . . you had a reasonable belief that the use of such force was necessary to prevent imminent death or great bodily harm. The Court finds that's just not supported by the evidence.

Following the denial of the motion to dismiss, the case proceeded to a jury trial. Valdes did not testify in his defense, but his self-defense claim was presented to the jury through his recorded interviews, as well as a video depicting the reenactment of the shooting, which were played to the jury. Valdes' recollection of the events during the interviews was essentially the same as his Stand Your Ground testimony. Valdes' girlfriend also gave a statement to the law enforcement officers at the scene, which was recorded,

7

and played to the jury. She testified and her account of the events leading up to the shooting was, for the most part, consistent with her Stand Your Ground testimony, but added that she told an officer that Alvarez attacked Valdes with a knife, cutting him, then when Alvarez turned around, Valdes shot him. The trial testimony of Alvarez, the neighbor, and the law enforcement officers was consistent with their testimony presented at the Stand Your Ground hearing.

After the state rested its case-in-chief, Valdes moved for a judgment of acquittal on the basis the state failed to present sufficient evidence to disprove the self-defense claim as a matter of law, but the trial court denied his motion. Prior to deliberations, the trial court instructed the jury on self-defense, as well as the state's burden to prove Valdes' guilt beyond a reasonable doubt. Ultimately, the jury found Valdes guilty of the lesser included offense of aggravated battery with a firearm, and the trial court sentenced Valdes to twenty-five years' imprisonment. Valdes appealed the judgment of conviction and sentence. On December 19, 2019, a day after we affirmed the judgment, the Florida Supreme Court decided Love II, in which it determined that "[s]ection 776.032(4) is a procedural change in the law and applies to all immunity hearings conducted on or after the statute's effective date." 286 So. 3d at 190.

8

Analysis

Valdes argues he is entitled to a new Stand Your Ground hearing conducted under the revised burden of proof shifted by amended statute, because the trial court improperly applied the pre-2017 burden of proof in his pretrial hearing, and the state failed to overcome by clear and convincing evidence his claim of self-defense immunity. The state contends that any error in the court's failure to apply the correct standard during the hearing was harmless beyond a reasonable doubt, as Valdes presented his self-defense claim to the jury at trial, and he was found guilty beyond a reasonable doubt of the lesser included offense of aggravated battery.

Pursuant to the Stand Your Ground statute, "a person is justified in using deadly force and does not have a duty to retreat if that person [reasonably] believes such force is necessary to prevent [imminent] death or great bodily harm" to the person or to another person. Hart v. State, 308 So. 3d 655, 657 (Fla. 4th DCA 2020) (citing § 776.032(1), Fla. Stat. (2017)); see also § 776.012(2), Fla. Stat. (2017). Under the statute, a criminal defendant may raise his or her claim of self-defense immunity from criminal prosecution at a pretrial immunity hearing. See § 776.032(4). "[T]he entire purpose of this immunity [hearing] is to provide a mechanism by which a person who is asserting lawful self-defense may have the defense heard early in the

9

process to avoid the time and expense of a trial." Mency v. State, 292 So. 3d 1, 2 (Fla. 1st DCA 2019) (Roberts, J., concurring); cf. Dennis v. State, 51 So. 3d 456, 462 (Fla. 2010) ("While Florida law has long recognized that a defendant may argue as an affirmative defense at trial that his or her use of force was legally justified, section 776.032 contemplates that a defendant who establishes entitlement to the statutory immunity will not be subjected to trial.").

After losing a self-defense immunity hearing, a defendant may "vindicate his [or her] right to self-defense" in two ways. Mency, 292 So. 3d at 3-4 (Roberts, J., concurring). Should the defendant wish to avoid trial, he or she may challenge the denial of a motion to dismiss by fling a petition for writ of prohibition in appropriate appellate court, which is the preferred method to challenge the denial. Id. If the defendant does not petition for writ of prohibition, or his or her petition for writ of prohibition is denied, the defendant may still proceed to trial and present his or her self-defense immunity claim to the jury. Id. at 4.

With regard to presentation of the claim of self-defense at a pretrial immunity hearing, in 2017 the burden of proof was shifted from the defendant to the state as follows:

> In a criminal prosecution, once a prima facie claim of
> self-defense immunity from criminal prosecution has

10

> been raised by the defendant at a pretrial immunity hearing, the burden of proof by clear and convincing evidence is on the party seeking to overcome the immunity from criminal prosecution provided in subsection (1).

§ 776.032(4). Following the amendment, the question of who bears the burden of proof may be of most significance in extremely close cases, or in cases where courts have only limited evidence to consider. See Maddox, 288 So. 3d at 1224. As to a claim of self-defense presented at trial, "the standard has always been that the state is required to prove beyond a reasonable doubt that the defendant, after a showing of a *prima facie* claim of self-defense, did not act in lawful self-defense," Mency, 292 So. 3d at 4 (Roberts, J., concurring), which is a higher standard of proof than the standard of overcoming a defendant's self-defense immunity claim by clear and convincing evidence at a pretrial hearing, Boston v. State, 296 So. 3d 580, 583 (Fla. 1st DCA 2020), review granted, No. SC20-1164 (Fla. Oct. 7, 2020).

Here, the trial court's finding that this was "not even a close case" in the pretrial Stand Your Ground hearing implies that Valdes' self-defense claim failed under the post-amendment as well as the prior burden of proof. As such, there would be "no useful purpose" in remanding the case for another immunity hearing. See Maddox, 288 So. 3d at 1224 (finding

11

defendant was not entitled to new Stand Your Ground hearing because his claim failed under either burden of proof"); see also Hart, 308 So. 3d at 658 (finding, in part, that new Stand Your Ground hearing was not required, as "[t]he trial court's findings in the first SYG hearing demonstrate[d] the defendant's self-defense claim fail[ed] under either burden of proof"). More importantly, in this case, Valdes was also afforded the opportunity to present his self-defense claim to the jury at trial, but the jury rejected it, finding him guilty of the lesser included offense of aggravated battery. As the Florida Supreme Court recognized in Dennis, 51 So. 3d at 463, in some cases, a jury verdict may render an error in denying a motion to dismiss based on the Stand Your Ground law harmless. This is such a case.

In Dennis, following a domestic violence incident, the state charged the defendant with attempted first-degree murder. Id. at 458. He moved to dismiss the information pursuant to section 776.032, Florida Statutes (2006), asserting that "his actions were a justified use of force." Id. The state argued that the existence of material facts required the denial of the motion. Id. The trial court agreed, concluding it lacked authority to conduct an evidentiary hearing, as "in enacting section 776.032, the Legislature did not intend to take the question of immunity away from the jury." Id. Prior to trial, the state reduced the charge to aggravated battery. Id. At trial, the defendant testified

in his own defense, and called a witness, who testified that the incident at issue was instigated by the victim hitting the defendant with a beer bottle. Id. at 464. The state presented evidence contradicting the self-defense claim. Id. The defendant's motion for judgment of acquittal was denied, and the jury impliedly rejected the claim of self-defense, finding the defendant guilty of felony battery. Id.

The Florida Supreme Court held the defendant was not entitled to relief despite the court's failure to make a pretrial evidentiary determination regarding the immunity claim, as based on the record before it, the error was harmless beyond a reasonable doubt. Id. The court reasoned that the defendant received a fair trial, his ability to present the claim of self-defense to the jury was not limited in any way by the pretrial ruling, his self-defense claim was based on the same evidence that would have been presented at the Stand Your Ground hearing, and the jury rejected the self-defense claim by determining that the state established beyond a reasonable doubt that the defendant committed the lesser included offense of felony battery. Id.; see also Rice v. State, 90 So. 3d 929, 931 (Fla. 1st DCA 2012) (even if res judicata doctrine did not bar defendant's argument that court erred in denying his claim of immunity under Stand Your Ground law, any error in denial of

13

motion to dismiss was harmless once defendant was convicted by jury at trial).

Similarly, after Love II, two of our sister courts have determined that "a trial court's error in applying the correct burden at the immunity hearing can be cured if the state establishes the defendant's guilt at trial by proof beyond a reasonable doubt." Boston, 296 So. 3d at 583; see also Scheel v. State, 305 So. 3d 831 (Fla. 1st DCA 2020); Little v. State, 302 So. 3d 396 (Fla. 4th DCA 2020); Hart, 308 So. 3d at 658. By contrast, following Love II, the Second District determined that a defendant was entitled to a new immunity hearing conducted under the amended statute because his immunity hearing was held on the same day as the amendment became effective, even though the defendant was subsequently found guilty by a jury. Nelson, 295 So. 3d at 307.

In Boston, the defendant claimed self-defense immunity pursuant to the amended Stand Your Ground statute. 296 So. 3d at 583. After the trial court determined it was the defendant's burden to prove the immunity, the parties stipulated the court could rule on the motion during the trial. Id. At trial, the defendant presented his self-defense claim to the jury. Id. The court ruled on the motion after the defense rested, finding the defendant failed to prove his entitlement to immunity. Id. The jury was properly instructed on

14

the defendant's self-defense, as well as the state's burden to prove the guilt beyond a reasonable doubt, and found the defendant guilty of battery. Id. The First District found the defendant was not entitled to a new immunity hearing under these facts. Id. The court reasoned that "[b]ecause the State overcame [the defendant's] self-defense claim by meeting the heavier trial burden of proof beyond a reasonable doubt, the trial court's failure to require the State to overcome [the defendant's] immunity claim with clear and convincing evidence was cured," and there was no need to remand the case for another hearing. Id. at 583-84; see also Scheel, 305 So. 3d at 831 (same).

The Fourth District dealt with the same issue in Little, 302 So. 3d at 407. There, the state charged the defendant with aggravated assault with a deadly weapon and battery. Id. at 398. When denying the defendant's motion to dismiss the charges at the Stand Your Ground hearing, the trial court incorrectly applied the pre-2017 amendment burden of proof. Id. The case then proceeded to a jury trial, at which the defendant advanced his self-defense theory to the jury but was convicted of both charges. Id. The Fourth District agreed with Boston court that, "since '[t]he State's trial burden of overcoming the defendant's self-defense claim by proof beyond reasonable doubt is heavier than its pretrial burden of overcoming the defendant's self-

15

defense immunity claim by clear and convincing evidence,' the error with respect to the burden of proof at the SYG hearing can be 'cured if the State establishes the defendant's guilt at trial by proof beyond a reasonable doubt.'" Id. at 407 (quoting Boston, 296 So. 3d at 582). Applying this rationale to the case before it, the Fourth District found that "[p]er the jury verdict in th[e] case, . . . the burden of proof error at the SYG hearing was cured and there [wa]s no need to remand this case for another hearing." Id.; see also Hart, 308 So. 3d at 658 (affirming "[b]ecause the State overcame the defendant's self-defense claim by establishing the defendant's guilt beyond a reasonable doubt and the evidence from the first SYG hearing would also satisfy the new heightened burden of proof").

We likewise agree with the First District that, because at trial, the state is required to overcome the defendant's claim of self-defense by meeting the burden of proof beyond a reasonable doubt, which is a higher burden than the clear and convincing evidence standard the state was required to satisfy at the pretrial hearing, the trial court's error with regard to the burden of proof at the Stand Your Ground hearing may be cured by a subsequent guilty jury verdict at trial. See Boston, 296 So. 3d at 582.

Our review of the record in the instant case reveals that, in light of the jury verdict in this case, any error concerning the burden of proof in the trial

16

court's ruling on Valdes' entitlement to immunity at the Stand Your Ground hearing was harmless beyond a reasonable doubt. First, the defense theory and the evidence adduced in its support at trial were the same as the theory and evidence presented at the Stand Your Ground hearing. Although Valdes did not testify at trial, unlike during the prior hearing, he was nonetheless able to fully litigate his self-defense claim presented to the jury through his recorded interviews, as well as the reenactment video. Nothing in the record suggests that Valdes' ability to mount a defense or present evidence in support of his self-defense claim at trial was in any way frustrated or limited by the trial court's ruling at the Stand Your Ground hearing.

Further, during trial, Valdes moved for judgment of acquittal based on his claim that the state did not adequately rebut his defense, but the trial court denied his motion. Finally, prior to deliberations, the jury was correctly instructed on Valdes' claim of self-defense and the state's burden to prove Valdes' guilt beyond a reasonable doubt. By its verdict, the jury clearly found there was no reasonable doubt on the question of whether Valdes was justified in the use of deadly force, as it found Valdes guilty of aggravated battery with a firearm. Although this was a lesser included offense of the charged offense of attempted second-degree murder, it was for precisely the same conduct the trial court considered at the Stand Your Ground hearing,

17

with the only difference being the relevant intent. Based on this record, we conclude there is no reasonable possibility that the trial court's ruling at the Stand Your Ground hearing contributed to Valdes' conviction, and there is no need to remand the instant case for another Stand Your Ground hearing. Accordingly, we affirm the judgment of conviction and sentence. Because of our holding, as in <u>Boston</u>, <u>Little</u>, and <u>Hart</u>, we certify conflict with <u>Nelson</u>, 295 So. 3d at 307. <u>See</u> <u>Boston</u>, 296 So. 3d at 584; <u>Little</u>, 302 So. 3d at 407; <u>Hart</u>, 308 So. 3d at 658.

Affirmed; conflict certified.